UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 10, 2015

LETTER TO COUNSEL

      RE:    *Angela Shirey v. Commissioner, Social Security Administration*;
             Civil No. SAG-15-261

Dear Counsel:

On January 29, 2015, Plaintiff Angela Shirey petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 16, 19). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Ms. Shirey's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Shirey protectively filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 10, 2010. (Tr. 118-132). She alleged a disability onset date of April 20, 2010. (Tr. 118, 125). Her claims were denied initially and on reconsideration. (Tr. 63-67, 69-72). A hearing was held on September 4, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 34-58). Following the hearing, the ALJ determined that Ms. Shirey was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 15-33). The Appeals Council denied Ms. Shirey's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Shirey suffered from the severe impairments of bipolar disorder, intermittent explosive disorder, and generalized anxiety disorder. (Tr. 20). Despite these impairments, the ALJ determined that Ms. Shirey retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to work that is simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks in a work environment free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession. Further, the claimant

> can have no more than occasional interaction with coworkers and supervisors and no interaction with the general public.

(Tr. 23). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Shirey could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 27-28).

Ms. Shirey argues the following on appeal: (1) that the ALJ failed to apply proper weight to the opinions of treating sources; (2) that the ALJ's RFC assessment is not supported by substantial evidence; and (3) that the ALJ did not adequately account for Ms. Shirey's moderate limitation in concentration, persistence, or pace in the RFC assessment pursuant to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Each argument lacks merit and is addressed below.

Ms. Shirey first argues that the ALJ improperly "disgard[ed]" the opinions of Dr. Cummings, her treating psychiatrist, and Mr. Koch, her treating psychotherapist. Ms. Shirey cites a standard from *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986), in which the Fourth Circuit stated that "[a] treating physician's testimony is ignored only if there is persuasive contradictory evidence." Here, however, the ALJ discussed the treatment notes and opinions of both Dr. Cummings and Mr. Koch. Thus, the ALJ did not ignore the opinions as the Fourth Circuit found in *Foster*. Ms. Shirey also cites 20 C.F.R. §§ 404.1527 and 416.927, which outline the procedures and factors for weighing medical opinion evidence. Specifically, she cites a portion of the regulations stating that, "Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The regulations further state that if a treating source's opinion is well-supported by the medical evidence of record, it will be given controlling weight. If a treating source opinion is not given controlling weight, the regulations then provide a list of factors that should be considered in weighing medical opinions. These factors include: (1) examining relationship; (2) treatment relationship (including the length, nature, and extent of the relationship); (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id.* at §§(c)(2)-(c)(6).

With respect to Dr. Cummings's opinion, Ms. Shirey contends that the ALJ erred by considering only one of these factors, that of consistency. However, upon review, I note that the ALJ cited not only the consistency of Dr. Cummings's opinion with the record, but also the treating relationship, the examining relationship, his specialization as a psychiatrist, and the supportability of the opinion based on Ms. Shirey's allegations and reported activities of daily living. *See* (Tr. 24-25). Specifically, the ALJ noted that Ms. Shirey saw Dr. Cummings every two weeks from April, 2010 to February, 2013. *Id.* at 24. Even, so the ALJ found that Dr. Cummings's notes did not support a finding a disability and were not consistent with his opinion that Ms. Shirey "has poor to no ability to relate to coworkers, deal with the public, interact with supervisors and deal with work stressors." (Tr. 26). Accordingly, I find that the ALJ properly

applied the regulations in assigning weight to Dr. Cummings's opinion, and that his findings are supported by substantial evidence.

Regarding Mr. Koch's opinion, the ALJ similarly discussed the length, nature, and extent of his treatment relationship; his specialization as a mental health professional; the consistency of his opinion with the record, including his own treatment notes; and the supportability of his findings. Furthermore, the ALJ noted that Mr. Koch is not an acceptable medical source. The regulations provide that only acceptable sources can offer "medical opinions." 20 C.F.R. §§ 404.1513, 404.1527(a)(2), 416.913, 416.927(a)(2); SSR 06-03p, 2006 WL 2329939 at *1-2 (Aug. 9, 2006). Even so, Social Security Ruling 06-03p explains that "[a]lthough the factors set forth in 20 C.F.R. 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-3p, at *4. Here, the ALJ properly applied the factors for evaluating opinion evidence to the opinion of Mr. Koch, as a non-acceptable source.

Next, Ms. Shirey contends that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, she takes issue with the ALJ's finding that she is capable of "no more than occasional interaction with coworkers and supervisors and no interaction with the general public." (Tr. 23); Pl. Mem. 13. Ms. Shirey repeatedly cites the ALJ's discussion of reports from various medical sources stating that they "do not speak to Ms. Shirey's ability to interact with coworkers or supervisors." Pl. Mem. 14. In his discussion of the finding that Ms. Shirey has a moderate limitation in social functioning, the ALJ referred to Ms. Shirey's reports that she goes shopping once per month, cares for her two children, and "loves her therapist." (Tr. 22). He also cited Ms. Shirey's reports to a consultative examiner, Dr. Langlieb, stating that she goes out in public five or six days per week. *Id*. The ALJ noted similar statements by Ms. Shirey in his discussion of the RFC assessment. Specifically, he cited reports by Ms. Shirey during examinations in October and November 2010, indicating that she felt better, was less depressed, and had no new anger episodes. (Tr. 25). The ALJ also noted statements by Ms. Shirey to a consultative examiner, Dr. Tyutyulkova, in July 2011 that she felt 20 percent better than the year prior, and that her medication had helped "dramatically" with her panic attacks. (Tr. 25). While many of the medical opinions of record do not directly address Ms. Shirey's ability to interact with co-workers and supervisors, the ALJ largely relied on Ms. Shirey's own statements about her activities of daily living in reaching his conclusions about her ability to interact with co-workers, supervisors, and the general public. Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Based on this standard, I find that the ALJ's RFC assessment is supported by substantial evidence.

Additionally, Ms. Shirey argues that the State agency psychological consultants did not review Dr. Cummings's opinions in arriving at their own opinions, and that "[m]oderate weight

to two non-examining state agency consultant's (sic) cannot be substantial evidence that Ms. Shirey can work with others…" Pl. Mem. 14. Social Security regulations recognize that State agency consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Furthermore, the fact that additional medical evidence was added to the record after the opinions of the State agency consultants renders them no less valid as of the dates they were written. I also note that the ALJ discredited Dr. Cummings's opinion not based on a comparison to the findings of State agency consultants, but based on a comparison to his own treatment notes, which noted improvements in Ms. Shirey's functioning. *See* (Tr. 25-26). In addition, the ALJ stated that the opinion of State agency consultant, Dr. Langlieb, was "consistent with the normal mental status examinations contained throughout the medical record, and discussed in detail above, in particular the exams from May, August and November 2011, January and December 2012 and February 12, 2103 (sic)…" (Tr. 25). Although the ALJ did not explicitly say that Dr. Langlieb's opinion is consistent with Dr. Cummings's treatment notes, the examinations to which he refers occurred during the period that Ms. Shirey sought regular treatment with Dr. Cummings. Accordingly, I find that the ALJ supported his findings with substantial evidence discussed throughout his decision.

Finally, Ms. Shirey argues that the ALJ's RFC assessment did not adequately account for the finding at step three that she has a moderate limitation in concentration, persistence, and pace, pursuant to the holding in *Mascio v. Colvin*, 780 F.3d 632. In *Mascio*, the Fourth Circuit determined remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d at 638. Although a similar discrepancy appears to exist in this case, it is critically distinguishable in several respects, and *Mascio* does not require remand.

To understand why this case is distinguishable from *Mascio*, some background is necessary. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein,[1] consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability

---

[1] Listing 12.05, which pertains to intellectual disability, and Listing 12.09, which pertains to substance addiction disorders, do not follow this structure.

to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The RFC assessment is distinct, but not wholly independent, from the ALJ's application of the special technique at step three. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace, at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

In this case, at step three, the ALJ found that Ms. Shirey has a moderate limitation in her ability to maintain concentration, persistence, or pace. In his discussion of the limitation, the ALJ noted Ms. Shirey's reports that she needs reminders to take medication and care for her personal grooming, has a poor ability to follow spoken instructions, an inability to handle stress or changes in routine, and an ability to pay attention for five to ten minutes. (Tr. 22). Even so, he contrasted her allegations with findings from mental status examinations indicating that her cognitive ability was intact and her thought processes was logical. *Id.* In his RFC assessment, the ALJ found that Ms. Shirey is limited to "work that is simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks in a work environment free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession. Further, the claimant can have no more than occasional interaction with coworkers and supervisors and no interaction with the general public." (Tr. 23). While limitation to unskilled work alone is insufficient under *Mascio*, here the ALJ included other

limitations that clearly account for Ms. Shirey's moderate limitation in concentration, persistence, or pace.  Specifically, the limitation to an environment free of fast-paced production requirements assures that Ms. Shirey is not required to produce any particular volume of work-product at a particular rate.  Thus, the ALJ accounted for any time that Ms. Shirey would be off-task due to her limited ability to maintain focus.  Accordingly, I find no error warranting remand under *Mascio*.

For the reasons set forth herein, Ms. Shirey's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED.  The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge